

# NUMBER 13-07-00648-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARK HADDARD, PERSONAL REPRESENTATIVE
FOR THE ESTATE OF VIRGINIA L. POTTER,                    Appellant,

v.

MARY MEDINA RIOS,                                        Appellee.

## On appeal from County Court at Law No. 1
## of Hidalgo County, Texas.

# DISSENTING MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela**
**Dissenting Memorandum Opinion by Justice Vela**

I agree with the majority that there was no evidence offered by Rios with respect to her lost wages and I also agree that the trial court should have enforced the rule 11 agreement between the parties. I disagree, however, that Rios presented legally sufficient evidence by a medical expert that either her past or future medical expenses

were caused by the accident made the basis of the lawsuit. I would reverse and remand to the trial court based upon the Texas Supreme Court's holding in *Guevara v. Ferrar,* in which that Court concluded that: "expert medical evidence is required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons." 247 S.W.3d 662, 665 (Tex. 2007). By utilizing *Guevara,* I do not mean to suggest that it presents the same factual scenario as this one. Rather, the law the supreme court iterates is applicable to the facts of this case.

In addition to the reasonableness and necessity of medical services which were established here, expert testimony is generally necessary to establish causation with respect to medical conditions that are outside the common knowledge of jurors. *Id.* But in certain circumstances, causation can be supported by non-expert testimony. *Id.* at 666. Lay testimony that establishes a sequence of events that provides a "strong logically traceable connection between the event and the condition is sufficient proof of causation." *Id.* (*quoting Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984)). In *Guevara*, the court noted that there were situations where a "causal connection between some events and conditions of a basic nature (and treatment for such conditions) are within a layperson's general experience and common sense." *Id.* at 668. The court noted that federal courts have held that temporal proximity between an accident and injury will not, by itself, support an inference of medical causation. *Id.* at 667. Causation as to "certain types of pain, bone fractures, and similar basic conditions

following an automobile collision can be within the common experience of lay jurors." *Id.*

In *Guevara*, the court determined that the circumstances surrounding the accident and the plaintiff's complaints were sufficient to allow a layperson to determine that plaintiff's immediate post-accident condition resulting in a trip to the emergency room was causally related to the accident. But, the supreme court ultimately concluded that the evidence was "not legally sufficient to prove what the conditions were that generated all the medical expenses or that the accident caused all of the conditions and the expenses for their treatment." *Id.* at 670.

In applying *Guevara's* limited exception to the facts here, I would consider the accident and the injuries Rios complains of to determine if they are of the type that "the general experience and common sense of laypersons" are sufficient to evaluate her injuries and whether they were more likely than not caused by the motor vehicle accident. *Id.* at 668.

Here, Rios testified that immediately after the accident occurred, she was placed on a stretcher and taken by ambulance to Knapp Medical Center. She testified at trial that immediately after the accident her whole body was hurting. There were x-rays and other tests performed before she was released later that day. A few days later, she went to Dr. Arango because she was still in pain. Dr. Arango performed some tests and referred her to therapy. It took three months before she could return to work because of the severity of the pain. Rios testified that she had back problems before the accident, but the pain was totally different from the pain she experienced after the accident. The medical records reflected a mild disc space narrowing more than a year before the

accident.

Rios asserts that the record contains statements that her injuries were proximately caused by the accident. She points to a narrative report from a neurosurgeon, who iterated her history as: "low back pain started since February 10, 2003, when patient had a motor vehicle accident." The neurosurgeon did not testify at trial with respect to causation. Thus his statement in a medical record with regard to the patient's reported history cannot, in a vacuum, support causation. Rios also urges that her own testimony is evidence of causation. To a certain extent, I agree. For instance, Rios's testimony about the accident, the immediate treatment she received, and the pain she testified to immediately after the accident is legally sufficient to prove that some, but not all of her complained-of injuries were caused by the accident. It is within the general experience and common knowledge of laypersons that the injuries from an automobile accident required her to be transported to the hospital and to be cared for while there. As in *Guevara*, while there is legally sufficient evidence to allow a layperson to determine that her immediate post-accident condition, which resulted in her being transported to the emergency room was causally related, there is not legally sufficient evidence to prove that the accident caused all of the conditions and expenses that she claims. She, herself, testified that she experienced previous back pain and previous injury was documented in the record.

At trial, Rios called Benjamin Barnett, a chiropractor, to testify regarding the medical records, even though he was neither a physician nor the chiropractor who actually treated Rios. On direct examination, Dr. Barnett testified that Rios first went to Stonebridge

4

Clinic on February 12, 2003, two days after the accident. Dr. Barnett stated that Rios came to the clinic with general symptoms of neck pain, muscle spasms in the neck, mid-back pain, low back pain, stiffness and headaches. Dr. Driggers, another chiropractor, ordered conservative treatment, including physical therapy and chiropractic manipulation. In May and June of 2003, Rios returned to the clinic because of lower back pain. The notes indicated that Dr. Driggers referred her to a neurosurgeon for the low back complaints. Dr. Driggers's report suggested that that an MRI showed evidence of herniations. Dr. Barnett then read from the records of Dr. Pechero, who opined that if Rios continued to have problems, then surgical intervention would be warranted. He also read from a narrative from Gabriel Diaz M.D., in which Dr. Diaz stated that the "low back pain started since February 10, 2003, when the patient had a motor vehicle accident." There was also a note, from Stoneridge, that said that there would be periodic exacerbation of the cervical, lumbar and thoracic spine. Except for reiterating a comment by the patient that her problems occurred at the time of the accident, Dr. Barnett did not testify regarding a causal link between Rios's injury and the damages claimed.

On cross-examination, Dr. Barnett testified that the medical records showed mild disc space narrowing prior to the accident. At the time of the accident, the radiological note stated that there was no evidence of fracture and minor degenerative disease. Dr. Barnett opined that herniations can be caused by things other than trauma. On redirect, Dr. Barnett testified that herniations result when a person is struck in a car accident. Dr. Barnett thought it was doubtful that minor degenerative disease would result in the disc herniation that Rios was experiencing. He opined that it would more likely have been the

5

result of some type of trauma. He did not, however, testify that all of the medical expenses incurred were as a result of the accident made the basis of the suit.

While Rios's testimony about the accident and treatment she received immediately following the accident is legally sufficient to prove that the injuries at that time were caused by the accident, the probable duration of such injuries and necessity of future treatments are not within the general experience of laypersons. *See Tex. Dept. of Transportation v. Banda*, No. 03-09-00724-CV, 2010 WL 5463857, at *5 (Tex. App.—Austin Dec. 22, 2010, pet. denied) (mem. op).

With respect to future medical expenses, the majority holds that "Rios established her future medical costs with the testimony of Ruben Pachero, M.D." Texas follows the "reasonable probability rule" for future damages for personal injuries. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Thus, to recover future medical expenses, a plaintiff must show that there is a reasonable probability that expenses resulting from the injury will be necessary in the future and the reasonable costs of such care. *Id.*

We first note that although expert testimony is not always required to establish future damages, Dr. Pachero did not testify at trial. Only a one page document from his medical records that was unsigned and dictated, but not read, was included in the medical records that were admitted into evidence. The document does not suggest the reasonable cost or necessity of such future care for injuries as a result of the accident.

I would conclude that expert testimony was required to establish some of Rios's past damages. I do not believe the evidence offered is legally sufficient to prove that the

6

accident generated all the medical expenses or that it caused all the conditions and expenses for her treatment. I would remand to the trial court for a new trial. *See Guevara*, 247 S.W.3d at 668.



                                        ROSE VELA
                                        Justice

Delivered and filed the
5th day of April, 2012.